The General Assembly, by an act which went into effect 11 February, 1863, imposed a tax of all the net profits above 75 per cent upon the cost of production on every person or corporation manufacturing cotton or woolen cloth, or a mixture of both, from and after the first day of January of the same year. The plaintiffs were manufacturers of cotton cloth on 1 January, 1863, and continued to be so during that year, and having, as they admitted, made a profit of $1,500 in their business, between 1 January and 11 February, they paid the same to the sheriff under protest, and brought this action to recover it back.
In the argument here the counsel for the plaintiff contends that the Legislature had no power to impose a tax upon the past profits of the plaintiff's business. He insists that the tax is in effect a capitation tax, and as such is imposed contrary to the Ordinance of the Convention of 1861, entitled "An ordinance in relation to taxation." That ordinance provides, "that all free males, over the age of 21 years and under the age of 45 years, shall be subject to a capitation tax not less than the tax laid on land of the value of $300, and no other free person shall be liable to such taxation; and also land and slaves shall be taxed (223) according to their value, and the tax on slaves shall be as much but not more than that on land, according to their respective values; but the tax on slaves may be laid on their general average value in the State, or on their value in classes in respect to age, sex, and other distinctive properties, in the discretion of the General Assembly, and the value be assessed in such modes as may be prescribed by law." It is manifest that if the tax to which the plaintiffs object be a capitation tax, it is not assessed in accordance with the provisions of this ordinance, and the act imposing it is in violation of the fundamental laws of the State, and is therefore void. The question then is, Can the tax be deemed a capitation or poll tax? The counsel insists that it is, for the following reasons: A tax, he says, on the land, franchises, slaves, or other personal chattels and choses in action which a man now owns is a tax on his property, and is a legitimate impost upon him. so he may be rightfully taxed on the profits of his business, profession, or trade, or for a license to follow any particular business, profession, or trade. But a tax on any article of property, which he formerly owned, but which he has heretofore consumed, lost, or destroyed; or upon the profits of a business, profession, or trade which he followed, or in which he was engaged, in bygone times, which profits he has consumed, lost, destroyed, or converted into some other kind of property; or upon a license heretofore granted to pursue a business, profession, or trade which he has ceased to follow or be engaged in, cannot be called a tax on property, profits, or licenses, because when it is imposed the subjects of it have no existence. Being past and gone, they are to be considered as if they *Page 136 
never had been. Such a tax, then, can be only upon the person. It is to all intents and purposes nothing more nor less than a capitation (224) or poll tax. This is a succinct statement of the argument of the plaintiff's counsel, presented by him, however, in a variety of views, and with many ingenious illustrations. Of its force and conclusiveness we do not feel ourselves called upon to judge, because we do not think it applies to the law in question, as we shall now endeavor to show.
The act required that the manufacturers of cotton cloth, who carried on their business from and after 1 January, 1863, should pay annually a certain tax upon their profits. It was well known to those who passed the act that such manufacturers did not, and from the nature of their business could not, ascertain and declare a dividend of profits, either daily, weekly, or monthly. Hands had to be employed, raw materials purchased, and a great many things done before sales could be made and accounts stated so as to show what the profits were. It was well known, too, to the Legislature that partnerships and corporation were in the habit of declaring dividends at certain stated periods, usually annually or semiannually, but never as frequently as monthly or even quarterly. It was further known that winter was mainly the time for preparing the ensuing year's work, by hiring workmen, purchasing supplies, etc., and hence was the time for expenses rather than profits, for the latter were to be realized afterwards. Hence, there could be no profits, properly speaking, for the first month or two of the year, and when they did accrue, the law would be in force and would apply to them as present and accruing, and not past profits. It certainly can be no objection to the validity of the act that the work and materials which were to produce the profits after its ratification were in existence prior to that time.
But it may be said that the bill of exceptions states as a fact that a certain sum was realized as profits between 1 January, 1863, and (225) 11 February of the same year, when the act was ratified, and that we must take the fact to be so, without inquiring as to how it was ascertained. A sufficient reply, we think, is this: that the law directed the tax upon the profits to be paid annually, and clearly means such profits as are ascertained in the usual way and at the usual stated periods. If the plaintiffs kept their books so as to have a balance sheet of profits and loss struck de die in diem, or from week to week, or month to month, it ought to have been so stated in the case; for we know that such a course, in business of the kind in which they were engaged, is not common, even if it be possible. They certainly had no right to do what we suspect they did — that is, make out the account of profits at the end of a half year, and then calculate the average per month or week. Profits have never in fact been realized in such way; and the *Page 137 
Legislature never intended that they should be ascertained by such a mode of calculation.
Our conclusion, then, is that the act of the Legislature in question did not apply to profits past and gone, but to profits then in the process of being made, and which were in fact ascertained and declared after the law went into effect, and that consequently the act is constitutional and valid.
Affirmed.
Approved: S. v. Bell, 61 N.C. 86; Huggins v. Hinson, id., 128.
(226)